ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, New York 10004
Tel.: (212) 267-2101
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

FERNANDO VEGA, ERENDIRA GONZALES, EMILIO VEGA, and LUZ VEGA on behalf of themselves and on behalf of all others similarly situated,

Plaintiffs,

-against-

COFFEE BOYS LLC d/b/a MAIN STREET COFFEE and KEVIN GUMB,

Defendants.

-----------------------------------------------------X

**Docket No.:**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Fernando Vega ("Fernando"), Erendira Gonzales ("Gonzales"), Emilio Vega ("Emilio"), and Luz Vega ("Vega") (Fernando, Erendira, Emilio and Luz are, collectively, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated, by and through their attorneys, Robert Wisniewski P.C., as and for their Complaint against Defendants Coffee Boys LLC d/b/a Main Street Coffee ("Corporate Defendant") and Kevin Gumb ("Individual Defendant") (Corporate Defendant and the Individual Defendant are, collectively, "Defendants"), state as follows:

## NATURE OF THE ACTION

1. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, bring this action to recover unpaid wages, unpaid overtime wages, unlawful retention of tips, retaliation and liquidated damages, as well as reasonable attorneys' fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("FLSA"); Articles 6 and 19, and §§ 191 and 198-b of the New York Labor Law ("NYLL"), various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143, and the common law of the State of New York.

## PARTIES, JURISDICTION AND VENUE

2. At all relevant times, Plaintiff Fernando, a former employee of the Corporate Defendant, was and is a resident of the State of New York, Richmond County.

3. At all relevant times, Plaintiff Gonzales, a former employee of the Corporate Defendant, was and is a resident of the State of New York, Richmond County.

4. At all relevant times, Plaintiff Emilio, a former employee of the Corporate Defendant, was and is a resident of the State of New York, Richmond County.

5. At all relevant times, Plaintiff Luz, a former employee of the Corporate Defendant, was and is a resident of the State of New York, Richmond County.

6. At all relevant times, the Corporate Defendant, which operates a coffee shop, was and is a domestic business corporation incorporated under, and existing by virtue of, the laws of the State of New York, and having its principal place of business at 3728 Richmond Road, Staten Island, NY 10306.

7. At all relevant times herein, upon information and belief, the Individual Defendant was and is a resident of the State of New York, Richmond County.

8. The Individual Defendant is the owner, member, officer, and/or manager of the Corporate Defendant, and as the managing-member is individually responsible for unpaid wages under the New York Limited Liability Company Law.

9. Defendants operate Main Street Coffee, a coffee shop, in the town and farm museum complex known as the Historic Richmond Town at 3728 Richmond Road, Staten Island, NY 10306.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 in that they form part of the same case or controversy.

11. Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of Defendants employ, handle, and sell goods that have been moved in or produced for interstate commerce (including coffee grinders, brewers, espresso machines, freezers, shelves, mixers, ovens, toasters, utensils, chairs, tables, etc.), and Defendants are thus employers subject to the jurisdiction of the FLSA.

12. This Court has personal jurisdiction over the Corporate Defendant as it is organized in the State of New York and have its principal place of business herein.

13. This Court has personal jurisdiction over the Individual Defendant in that he is a citizen of, and resides in, the State of New York.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b), because substantial events giving rise to Plaintiffs' claims occurred in this district.

## JURY DEMAND

15. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

16. Fernando was employed by Defendants as a cook and cashier from September 2021 until his termination on or about May 30, 2025.

17. Gonzales was employed by Defendants as a kitchen assistant from September 2021 until her termination on or about May 30, 2025.

18. Emilio was employed by Defendants as a barista from September 2021 until his termination on or about May 30, 2025.

19. Luz was employed by Defendants as a barista from about February 22, 2022 until her termination on or about May 30, 2025.

20. At all relevant times herein, the Individual Defendant was and is still the owner, director, officer, and/or majority shareholder of the Corporate Defendant and has exercised financial and operational control over the Corporate Defendant.

21. Defendants operate Main Street Coffee, a coffee shop, in the town and farm museum complex known as the Historic Richmond Town at 3728 Richmond Road, Staten Island, NY 10306.

22. As part of their business, Defendants employed several workers, including Plaintiffs.

23. Fernando worked as a cook and cashier and was paid a salary of $233 a day regardless of the hours he worked, from September 2021 until on or about May 30, 2025. However, his pay would decrease every winter, from October until May, to about $186 before increasing back to $233 in the summer, from May until October. He worked seven days a week, on average 10-13 hours a day, with an unpaid 10-to-15-minute lunch break, totaling about 83 hours a week.

24. Fernando was paid a flat daily rate and did not receive time and a half for hours worked over 40 per week, in violation of FLSA and NYLL requirements. He was effectively paid at his regular rate for all hours. During winter (October-May), his pay decreased to about $186 a day, meaning his effective hourly rate during winter was approximately $15.69 per hour. For 2024 (NYC minimum wage of $16.00/hour), his effective hourly rate of $15.69 was below the minimum wage. For 2025 (NYC minimum wage of $16.50/hour), his effective hourly rate of $15.69 was also below the minimum wage.

25. Gonzales worked as a kitchen assistant and was paid $150 a day regardless of the hours she worked from September 2021 until her termination on or about May 30, 2025. However, her pay would decrease every winter, from October until May, to $120 a day before increasing back to $150 in the summer, from May until October. She worked seven days a week, approximately 12 hours a day with an unpaid 10-to-15-minute lunch break, totaling 83 hours a week.

26. Gonzales was paid a flat daily rate and did not receive time and a half for hours worked over 40 per week, violating FLSA and NYLL. Gonzales's effective hourly rate during summer was approximately $12.65 per hour, which means her $12.65/hour rate was

below the NYC minimum wage for 2021, 2022, and 2023 ($15.00/hour), for 2024 ($16.00/hour), and for 2025 ($16.50/hour). During winter (October-May), her pay decreased to $120 a day, meaning her effective hourly rate during winter was approximately $10.12 per hour. Her $10.12/hour rate was below the NYC minimum wage for 2021, 2022, and 2023 ($15.00/hour), for 2024 ($16.00/hour), and for 2025 ($16.50/hour).

27. Emilio worked as a barista. He was initially paid an hourly rate of $8 from September 2021. After two months, in November 2021, his wage increased to $10 per hour. In September 2023, his wage increased once again to $11 per hour, until his termination on or about May 30, 2025. During the school year (September-June), he worked 4 days a week (Thursday-Sunday) on average 10-12 hours per day, with an unpaid 10-to-15-minute lunch break, totaling about 43 hours a week. During breaks and summer (June-September), he worked 5-7 days a week, approximately 10-12 hours a day, with an unpaid 10-to-15-minute lunch break, totaling about 65 hours a week.

28. Emilio's hourly rates of $8.00, $10 and $11 were far below the NYC minimum wage at all relevant times ($15.00 from 2021-2023, $16.00 in 2024 and $16.50 in 2025). He regularly worked over 40 hours a week but he was paid at his regular hourly rate for all hours worked, and not at time and a half for overtime hours, violating FLSA and NYLL.

29. Luz worked as a barista and was consistently paid an hourly rate of $10 from February 22, 2022, until her termination on or about May 30, 2025. Her schedule mirrored Emilio's: during the school year (September-June), she worked 4 days a week (Thursday-Sunday) on average 10-12 hours per day, with an unpaid 10-to-15-minute lunch break,

totaling about 43 hours a week. During breaks and summer (June-September), she worked about 6 days a week, approximately 10-12 hours a day, with an unpaid 10-to-15-minute lunch break, totaling about 65 hours a week.

30. Luz's hourly rate of $10 was far below the NYC minimum wage ($15.00 from 2021-2023, $16.00 in 2024 and $16.50 in 2025). She regularly worked over 40 hours per week but was paid at her regular hourly rate for all hours worked, and not at time and a half for overtime hours, violating FLSA and NYLL.

31. At all relevant times, Plaintiffs were employees of the Defendants and Defendants were their employers within the meaning of both the FLSA and the NYLL.

32. The FLSA (29 U.S.C. § 201 *et seq.*) states that workers must be paid time and a half at the actual regular rate for the hours of work over 40 in a workweek.

33. The relevant wage order promulgated by the New York Department of Labor requires employers to pay their employees at the rate of 1½ times their regular rate of pay for all hours worked over 40 in a workweek.

34. From the beginning of Plaintiffs' employments until their terminations, Defendants engaged in a scheme where they did not pay Plaintiffs at the overtime rate for all hours over 40 but instead paid them at the regular rate or only paid them a daily rate. Further, Defendants engaged in a scheme where they did not pay Plaintiffs at the minimum wage rate for all hours worked.

35. Furthermore, each Plaintiff took an unpaid 10-to-15-minute break. However, under 29 CFR §785.18, any short rest period of 5 to 20 minutes is considered work time and must be paid. Defendants did not pay Plaintiffs for the rest periods.

36. Including wage notice and statement violations, Fernando is owed not less than $95,401.97 in unpaid wages, overtime and tips.

37. Including wage notice and statement violations, Gonzales is owed not less than $160,227.975 in unpaid wages, overtime and tips.

38. Including wage notice and statement violations, Emilio is owed not less than $76,514.725 in unpaid wages, overtime and tips.

39. Including wage notice and statement violations, Luz is owed not less than $74,059.575 in unpaid wages, overtime and tips.

***Plaintiffs Fernando and Gonzales's Complaints About Their Wages***

40. Throughout their entire employment, Plaintiffs Fernando and Gonzales consistently complained to Defendants about Defendants decreasing their wages.

41. The pay would consistently decrease in October by approximately 20% when sales were low, and they would get their regular rate again in the summer (May). Fernando's pay decreased from $233 to around $186 and Gonzales's pay decreased from $150 to around $120. Fernando and Gonzales would complain every October when their pay decreased. They would protest the decrease in pay directly to the Individual Defendant whose usual excuse was that sales during the winter were low which to him justified the decrease in Fernando and Gonzales's pay. The Individual Defendant would usually increase their pay again around May.

42. However, in May 2025, Fernando and Gonzales asked the Individual Defendant to increase their pay. The Individual Defendant refused. When Fernando and Gonzales protested, Defendants terminated all Plaintiffs' employment on or about May 30, 2025.

***Defendants' Failure to Pay Credit Card Tips***

43. Defendants regularly failed to pay credit card tips to Plaintiffs and all others similarly situated.

44. Customers at Main Street Coffee left two types of tips – those who paid in cash left cash tips, and those who paid by credit card left tips on the credit card bill.

45. The store earned an average of $3,500 in credit card tips a month. This amount should have been distributed equally amongst all employees.

46. However, throughout their employment, Defendants did not pay any Plaintiffs any credit card tips they were owed. Instead, Defendants kept all of the credit card tips.

47. During this period of time, the number of employees was steady – around 6 – except that there was steady turnover amongst them, such that the total number of employees who worked in the past six years and seven months was approximately 40.

***Defendants' Failure to Provide Wage Notices and Wage Statements***

48. Plaintiffs were not given a wage notice when they were hired or at any time thereafter.

49. Plaintiffs were also not given any wage statements or accurate wage statements as required by the NYLL.

50. Defendants never gave Plaintiffs a W-2 form. As such, Plaintiffs were unable to ascertain exactly how much they were owed in overtime for each pay period and contest Defendants' pay calculations.

51. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices

trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

52. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs. Defendants' conduct actually harmed Plaintiffs. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate the rights of Plaintiffs. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants' failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

53. The injury of not receiving pay was directly linked to the lack of wage notices and wage statements, as Plaintiffs were not informed of their entitlement to certain pay.

54. Proper wage notices and statements would have informed Plaintiffs of their right to certain pay, enabling them to address any discrepancies and seek appropriate compensation.

55. Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiffs.

***Defendants' Failure to Pay Proper Wages was Willful***

56. Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked at the federal and state minimum wage rate, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week, and making, keeping, and preserving proper payroll records.

57. Defendants were aware of their requirement to pay Plaintiffs for each hour worked at the New York State minimum wage rate, and to pay the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week.

58. Nevertheless, Defendants failed to pay Plaintiffs their proper wages, including minimum wages and overtime wages.

59. As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

60. At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

***Facts Relating to Defendants as Joint Employers***

61. Upon information and belief, the Individual Defendant is the managing-member of the Corporate Defendant.

62. At all relevant times herein, the Corporate Defendant was and is controlled by the Individual Defendant.

63. At all relevant times herein, the Individual Defendant conducted business as the Corporate Defendant.

64. The Individual Defendant hired each Plaintiff and set their wages.

65. At all relevant times herein, the Individual Defendant acted for and on behalf of the Corporate Defendant, with the power and authority vested in him as the owner, officer, agent, and employee of the Corporate Defendant, and acted in the course and scope of his duty and function as the owner, manager, agent, and officer of the Corporate Defendant.

66. Each Plaintiff observed the Individual Defendant coming to the shop, hire and discipline employees and pay his employees, including Plaintiffs.

67. At all relevant times herein, the Individual Defendant directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and issuing cash to Plaintiffs.

68. The Individual Defendant had control over the conditions of employment of Plaintiffs, including their hiring and firing, their work schedules, the rate and method of payment of their wages, and the maintenance of their employment records.

69. At all relevant times herein, the Individual Defendant had operational control over the Corporate Defendant.

70. As a matter of economic reality, all Defendants are joint employers of Plaintiffs; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

**COLLECTIVE ACTION ALLEGATIONS**

71. Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by Defendants as baristas, cooks, and kitchen assistants but did not receive the compensation required by the FLSA and the federal wage orders codified in 29 C.F.R. § 552 et. seq. in respect to their work for Defendants.

72. Upon information and belief, this class of persons consists of not less than thirty (30) persons.

73. There are questions of law and fact common to the class specifically whether the employment of Plaintiffs by Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and the federal wage orders codified in 29 C.F.R. § 552 et. seq.

74. Only the amounts of individual damages sustained by each class member will vary.

75. Plaintiffs and Defendants' other employees are similarly situated insofar as Defendants instituted a policy not to pay Plaintiffs and other employees for all regular and overtime hours worked, and unlawfully retained tips.

76. Plaintiffs bring FLSA claims for relief herein on behalf of themselves individually and all persons similarly situated as a collective action pursuant to the FLSA, in respect to all

claims that Plaintiffs and all persons similarly situated have against Defendants as a result of Defendants' violation under the FLSA and the federal wage orders codified in 29 C.F.R. § 552 et. seq.

**<u>CLASS ACTION ALLEGATIONS UNDER RULE 23 FOR VIOLATIONS OF NYLL</u>**

77. Plaintiffs bring this action on behalf of themselves and all others similarly situated who were or are employed by Defendants as baristas, cooks, and kitchen assistants but did not receive the compensation required by the NYLL.

78. The proposed class is as follows:

  a. All non-exempt employees of Defendants who were or are employed as baristas, cooks, and kitchen assistants at Defendants' coffee shop located at 3728 Richmond Road, Staten Island, NY 10306 within six years and seven months from the date of the filing of this action (to account for Governor Andrew Cuomo's orders tolling the New York statutes of limitations by seven months).

  b. Excluded from the proposed class are those employees of Defendants:

    i. Who are exempt under the NYLL, including without limitation Defendants' corporate officers, managers and administrative personnel; and

    ii. Who have signed a valid general release as part of a separate court or administrative proceedings.

79. This class of persons consists of at least thirty persons**,** and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23(a)(1).

80. The exact number of members of the class who were and are baristas, cooks, and kitchen assistants, their identity and addresses can be easily ascertainable from Defendants' payroll and time records and other surveillance and productivity data in Defendants' possession.

81. Moreover, damages suffered by each putative member may be so small that prosecuting an individual claim may not be economical or practicable.

82. Plaintiffs are members of the class.

83. There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically:

a. Whether the employment of Plaintiffs and other workers by the Defendant is subject to the jurisdiction and the wage and overtime requirements of the NYLL and the wage orders promulgated thereunder; and

b. Whether Defendants' failure to pay their workers the proper wages, overtime wages, and unlawful retention of tips, violated NYLL's minimum wage, overtime wage, promised wage, and tip retention.

c. Only the amounts of individual damages sustained by each class member will vary.

84. The claims of Plaintiff are typical of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of Defendants. The damages sought by Plaintiff are typical of the damages that may be sought by the class.

85. Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

86. In addition, Defendants have acted or refused to act on grounds that apply generally to the class, so that declaratory relief is appropriate respecting the class as a whole under Fed. R. Civ. P. 23 (b)(2).

87. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

88. Plaintiffs bring the second, third and fourth claims for relief herein on behalf of themselves individually and on behalf of all persons similarly situated as a class action pursuant to Rule 23, in respect to all claims that Plaintiffs and all persons similarly situated have against Defendants for violations of the NYLL and the wage orders codified in 12 N.Y.C.R.R. §§ 137-143.

## FIRST CLAIM FOR RELIEF
**(Unpaid Wages and Overtime Under the FLSA)**
***Against all Defendants***

89. Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

90. Plaintiffs are persons covered by, and/or intended to benefit from, the provisions of the FLSA with respect to their work for Defendants.

91. Plaintiffs bring this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, and the Wage Orders issued under the FLSA at 29 C.F.R. § 500 *et seq*., under which Plaintiffs were entitled to a minimum wage and an overtime hourly wage of time and one-half their regular hourly wage for all hours worked in excess of forty hours per week.

92. Pursuant to the FLSA, Plaintiffs were entitled to certain minimum and overtime wages, which Defendants intentionally and willfully failed to pay in violation of such laws.

93. Plaintiffs regularly worked in excess of 40 hours per week for Defendants, but did not receive the proper overtime wages to which they were entitled for all hours worked.

94. Accordingly, Plaintiffs seek a judgment for unpaid minimum and overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs, along with an award of liquidated damages, interest, attorneys' fees and costs, as provided for by the FLSA.

## SECOND CLAIM FOR RELIEF
**(Unpaid Wages and Overtime Under NYLL)**
***Against all Defendants***

95. Plaintiffs repeat and reallege each and every previous allegation previously set forth.

96. Plaintiffs are persons covered by, and/or intended to benefit from, the provisions of the NYLL with respect to their work for Defendants.

97. Pursuant to the NYLL Articles 6 and 19, Labor Law §198, and the Wage Orders issued under NYLL at 12 N.Y.C.R.R. §§ 137-143, Plaintiffs were entitled to certain minimum wages, regular wages, and overtime wages, all of which Defendants intentionally and willfully failed to pay in violation of such laws.

98. Plaintiffs regularly worked in excess of 40 hours per week for Defendants, but did not receive the proper wages and overtime wages to which they were entitled for all hours worked.

99. Wherefore Plaintiffs seek a judgment against all Defendants for unpaid minimum, regular, and overtime wages which should have been paid, but were not paid, pursuant to

the NYLL and the Wage Orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs, along with an award of liquidated damages, attorneys' fees, interest and costs as provided under NYLL §198 and §663.

**<u>THIRD CLAIM FOR RELIEF</u>**
**(Wage Notice Violation Under NYLL)**
***Against all Defendants***

100. Plaintiffs repeat and reallege each and every allegation previously set forth.

101. NYLL § 195.1 mandates as of 2015 that, at the time of hire and when a wage rate is changed, each employee employed by Defendants receive for signature a Wage Notice, which had to contain the following wage information: (i) the basis of the employee's wage rates e.g., by the hour, shift, day, week, salary piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

102. Plaintiffs never received for signature the Wage Notice and never received any other paystubs or documents which might show the information required by NYLL § 195.1.

103. Accordingly, Plaintiffs seek damage allowed by the statute for themselves as well as attorneys' fees, costs and disbursements.

**FOURTH CLAIM FOR RELIEF**
**(Wage Statement Violation Under NYLL)**
***Against all Defendants***

104. Plaintiffs repeat and reallege each and every allegation previously set forth.

105. Pursuant to NYLL § 195.3 and the Wage Order §142-3.8, employers must provide an accurate wage statement with each payment of wages. Wage statements must include, among other information "the dates of work covered by that payment of wages; name of employee; address and phone number of employer; rate or rates of pay and basis thereof" and, where applicable, the overtime rate of pay.

106. In violation of the NYLL and the Wage Order, Defendants did not furnish Plaintiffs with wage statements that show the employee's rate or rates of pay, the number of hours worked, or recorded the proper pay rate for Plaintiffs' overtime hours.

107. Plaintiffs seek damages allowed by the statute.

**FIFTH CLAIM FOR RELIEF**
**(FLSA Retaliation)**
***Plaintiffs Fernando and Gonzales Against all Defendants***

108. Plaintiffs repeat and reallege each and every previous allegation previously set forth.

109. Plaintiffs are persons covered by and intended to benefit from the provisions of the FLSA.

110. Throughout Fernando and Gonzales's employment, they routinely complained to Defendants that they were not paid for all hours worked at the proper wages, particularly when Defendants began cutting their pay in 2024 and refused to increase it again in May 2025.

111. Defendants knew of such complaints but ignored them, and eventually terminated Plaintiffs in May 2025.

112. In committing such retaliatory acts, Defendants violated Section 15(a)(3) of the FLSA, which prohibits the discharge of any employee for complaining about an FLSA violation.

113. Wherefore, Plaintiffs seek damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(NYLL Retaliation)**
***Plaintiffs Fernando and Gonzales Against all Defendants***

114. Plaintiffs repeat and reallege each and every allegation previously set forth.

115. Plaintiffs are persons covered by and intended to benefit from the provisions of the NYLL.

116. Throughout Fernando and Gonzales's employment, they routinely complained to Defendants that they were not paid for all hours worked at the proper wages, particularly when Defendants cut their pay in 2024 and refused to increase it again in May 2025.

117. Defendants knew of such complaints but ignored them, and eventually terminated Plaintiffs in May 2025.

118. In committing such retaliatory acts, Defendants violated Section 215 of the NYLL, which prohibits the discharge of any employee for complaining about an NYLL violation.

119. Wherefore, Plaintiffs seek damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**(Spread-of-Hours Violation Under NYLL)**
***Plaintiffs Emilio and Luz Against all Defendants***

120. Plaintiffs Emilio and Luz repeat and reallege each and every allegation previously set forth.

121. Regulation 12 NYCRR §142-2.4(a) states that "(a)n employee shall receive one hour's pay at the minimum hourly wage rate, in addition to the minimum wage required by this part for any day in which: (a) the spread of hours exceeds 10 hours ... "Regulation 12 NYCRR §142-2.18 defines "spread of hours" as "the interval between the beginning and end of an employee's workday. The spread of hours includes working time plus time off or meals plus intervals off duty."

122. The beginning and end of Plaintiffs Emilio and Luz's shifts were routinely more than ten hours apart, specifically, their regular shifts from 7:00 a.m. to 7:00 p.m., resulting in a 12-hour spread of hours on multiple days each week.

123. In violation of the New York Labor Law, Defendants did not pay Plaintiffs Emilio and Luz an extra hour of compensation at the minimum wage rate for each day in which their spread of hours exceeded ten hours.

124. Wherefore Plaintiffs Emilio and Luz seek a judgment against all Defendants for unpaid spread-of-hours-wages which should have been paid, but were not paid, pursuant to the New York Labor Law and the Wage Orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs, along with an award of

liquidated damages, attorneys' fees, interest and costs as provided under New York Labor Law §198 and §663.

**EIGHTH CLAIM FOR RELIEF**
**(Unlawful Retention of Tips Under FLSA)**
***Against all Defendants***

125. Plaintiffs repeat and reallege each and every allegation previously set forth.

126. Plaintiffs and all others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the FLSA with respect to their work for the Corporate Defendants.

127. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, brings this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, and the Wage Orders issued under the FLSA at 29 C.F.R. § 500 *et seq*.

128. Pursuant to the FLSA, Plaintiffs and all others similarly situated were entitled to credit card tips, which the Corporate Defendants intentionally and willfully failed to pay in violation of such laws.

129. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, brings this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 203(m)(2)(B), which provides: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

130. Pursuant to the FLSA, Plaintiffs and all others similarly situated were entitled to certain credit card tips, which the Corporate Defendants intentionally and willfully retained in violation of such laws.

131. Accordingly, Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seeks a judgment for unpaid credit card tips, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs and all others similarly situated, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided for by the FLSA.

**NINTH CLAIM FOR RELIEF**
**(Unlawful Retention of Tips Under NYLL)**
***Against all Defendants***

132. Plaintiffs repeat and reallege each and every previous allegation previously set forth.

133. Plaintiffs and all others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the New York Labor Law with respect to their work for Defendants.

134. Pursuant to the New York Labor Law Articles 6 and 19, Labor Law §198, and the Wage Orders issued under New York Labor Law at 12 N.Y.C.R.R. §§ 137-143, Plaintiff and all others similarly situated were entitled to certain credit card tips, all of which Defendants intentionally and willfully failed to pay in violation of such laws.

135. NYLL § 196-d provides that "[n]o employer . . . shall . . . retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

136. Plaintiffs and all others similarly situated were never paid any credit card tips in which they were entitled.

137. Wherefore Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seek a judgment against all Defendants for certain credit card tips which should have been paid, but were not paid, pursuant to the New York Labor Law and the Wage

Orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiff and all others similarly situated, along with an award of liquidated damages, attorneys' fees, interest and costs as provided under New York Labor Law §198 and §663.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, demand a trial by jury and judgment against all Defendants as follows:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all monetary and/or economic damages;

C. An award of liquidated damages pursuant to the FLSA and NYLL for underpaid amounts; and

D. An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law.

**[no more text on this page]**

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
October 9, 2025

ROBERT WISNIEWSKI P.C.

By: *<u>/s/ Robert Wisniewski</u>*
Robert Wisniewski
*Attorneys for Plaintiffs*
17 State Street, Suite 820
New York, NY 10004
(212) 267-2101